**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ARTHUR VALENTE,<br><br>        Plaintiff,<br><br>   v.<br><br>PNC BANK, JOHN AND JANE DOES 1-10 (NAMES BEING FICTITIOUS/UNKNOWN AT THIS TIME), ABC INCS. 1-10 (NAMES BEING FICTITIOUS/UNKNOWN AT THIS TIME) AND XYZ CORPS. 1-10 (NAMES BEING FICTITIOUS/UNKNOWN AT THIS TIME),<br><br>        Defendants. | Civil Action No. 20-01710 (GC) (DEA)<br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

    **THIS MATTER** comes before the Court upon Defendant PNC Bank, N.A.'s Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure ("Rule") 56. (ECF No. 28.) Plaintiff the Estate of Arthur Valente[1] ("Plaintiff" or the "Estate") opposed (ECF No. 34) and Defendant replied (ECF No. 36). The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendant's Motion is **GRANTED**.

---

[1]    Arthur Valente, the original plaintiff in this case, passed away on October 5, 2021. (ECF No. 40.) On October 22, 2022, the Court permitted Mr. Valente's Estate to be substituted for Mr. Valente. (ECF No. 46.) While Mr. Valente's name remains in the case caption, for purposes of this Motion, the Court refers to Mr. Valente's Estate as Plaintiff.

## I.    BACKGROUND[2]

### A.  Procedural History

On or about January 9, 2020, Mr. Valente filed this lawsuit in the Superior Court of New Jersey, Monmouth County.  (ECF No. 1)  Mr. Valente asserted four causes of action: (1) age discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1 *et seq.*; (2) disability discrimination in violation of NJLAD; (3) intentional infliction of emotional distress ("IIED"); and (4) negligence.  On February 18, 2020, Defendant removed this case to this Court.[3]  (ECF No. 1.)   On June 15, 2020, the Court dismissed Count Four (negligence) of Mr. Valente's Complaint.  (ECF No. 14.)  Defendant now moves for summary judgment on Counts One through Three.

### B.  Facts Undisputed, or Substantiated by Record Evidence

The facts surrounding this case are largely undisputed.  The undisputed factual circumstances surrounding this action, as revealed through discovery, are set forth in submissions of the parties in accordance with Local Civil Rule 56.1. (*See* ECF No. 28-9, Defendant's Statement of Material Facts ("DSOMF"); ECF No. 34-3, Plaintiff's Statement of Material Facts ("PSOMF"); ECF No. 34-4, Plaintiff's Supplemental Statement of Material Facts ("PSSOMF"); ECF No. 36-2, Defendant's Supplemental Statement of Material Facts ("DSSOMF")[4]  Any disagreements

---

[2]    On a motion for summary judgment, the Court "draw[s] all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party." *Jaffal v. Dir. Newark New Jersey Field Off. Immigr. & Customs Enf't*, 23 F.4th 275, 281 (3d Cir. 2022) (quoting *Bryan v. United States*, 913 F.3d 356, 361 n.10 (3d Cir. 2019)).

[3]    This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

[4]    Hereinafter, when citing to both ECF No. 28-9 and ECF No. 34-3, the parties' statements of material facts, the Court will cite to "SOMF."  The Court's citation to SOMF indicates that a fact is not in dispute.

among the parties as to a fact or characterization are noted for clarity where necessary and appropriate.

Mr. Valente was born on June 28, 1947. (DSSOMF ¶ 1.)  Mr. Valente began working for Defendant in January 2002, at the age of 54.  (*Id.* ¶ 2.)  From January 2002 until Mr. Valente's discharge in July 2018, Mr. Valente served as a Business Advisor IV or Relationship Manager ("RM") III.  (*Id.* ¶ 3.)  From 2013 until Mr. Valente's termination, he reported to Group Manager, William MacDonald ("MacDonald").  (*Id.* ¶ 4.)  At the time Mr. Valente was terminated he was 71 years of age.  (*See* ECF No. 28-2 at 3:5-6[5].)

The record contains Mr. Valente's performance results tracing back to 2012.  In 2012, 2014, and 2016, at the ages of 65, 67, and 69 respectively, Mr. Valente received an overall evaluation of "Meets Some Expectations."[6]  (SOMF ¶¶ 36, 37, 43, 45, 61, 62.)  Mr. Valente in 2013 and 2015, however, received "Meets all Expectations" evaluations.  (*Id.* ¶¶ 39, 40, 49 54.)  During Mr. Valente's 2015 review, MacDonald noted that his revenue was over his goal, but was concerned that 85 percent of Mr. Valente's revenue was from a single client.  (*Id.* ¶ 50.)  MacDonald also noted the importance of documenting sales calls and activities in Defendant's online system, which Mr. Valente admits to being aware of.  (*Id.* ¶ 52.)  Again in 2016, MacDonald voiced his concern with Mr. Valente that the majority of his revenue originated from three clients, and that Mr. Valente failed to bring in a new client, which was similar to Mr. Valente's results in the prior two out of three years.  (*Id.* ¶ 63.)  Plaintiff admits that MacDonald previously discussed

---

[5]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[6]    Defendant used the following performance rating scale: "1-Does Not Meet Expectations; 2-Meets Some Expectations; 3-Meets All Expectations; 4-Exceeds Expectations; and 5-Significantly Exceeds Expectations."  (SOMF ¶¶ 16-17.)

these performance shortcomings with Mr. Valente in the past but disagrees that it was problematic for Mr. Valente to rely on a few large accounts as the key source of his revenue generation. (*Id.* ¶ 69; PSOMF ¶¶ 71-72.)

In 2017, prior to Mr. Valente's termination, Mr. Valente underwent two spinal surgeries for an orthopedic condition. (DSSOMF ¶ 9.) Before his surgery, Defendant approved a medical leave of absence for Mr. Valente. (*Id.* ¶ 10.) Mr. Valente was on disability leave for four months from May 2017 to September 2017. (*Id.* ¶ 11.) Upon returning to work, Plaintiff admits that he did not have a medical need for an accommodation, nor did he request an accommodation. (ECF No. 28-9 ¶ 151; ECF No 34-3 ¶ 151.) Mr. Valente also admitted that he had no restrictions and no ongoing need for any type of medical leave. (SOMF ¶ 80.)

Prior to Mr. Valente's medical leave, Mr. Valente admitted that MacDonald remained concerned that his production numbers were low, and that his call and activity tracking was not up to company standards. (*Id.* ¶ 83.) In January 2018, Mr. Valente attended his 2017 year-end performance review with MacDonald where MacDonald placed him on a performance-based disciplinary plan with a 90-day verbal warning, which then turned into a written warning on April 9, 2018. (*Id.* ¶¶ 15, 16.) Mr. Valente was given an overall evaluation of "Meets Some Expectations" for the fourth time in six years as his call numbers, client interaction, and revenue were not satisfactory.[7] (*Id.* ¶¶ 86, 88, 89.) As part of Mr. Valente's year-end review, Defendant only considered Mr. Valente's performance from the first five months of 2017, and the months during and after Mr. Valente's medical leave of absence in 2017 were not considered. (*Id.* ¶ 86.)

---

[7]     At his deposition, MacDonald emphasized that his concern about Mr. Valente's performance had little to do with Mr. Valente's revenue; it was behavioral in the sense that Mr. Valente just returned from leave and should be out talking to his clients regularly, but MacDonald stated, "there was no evidence of that." (SOMF ¶ 89.)

Moreover, Mr. Valente received credit for the revenue he generated from his accounts during his medical leave of absence. (*Id.*) Mr. Valente was warned that he must improve his performance, or risk further action. (*Id.* ¶ 91.)

At the end of his 2017 written evaluation, Mr. Valente wrote in response that he was being "managed out most likely because of my age," which MacDonald immediately relayed to the employee relations team. (*Id.* ¶¶ 92, 101.) A member of the employee relations teams contacted Mr. Valente, but he failed to respond to her messages. (*Id.* ¶ 102.) When questioned later about his allegations, Mr. Valente added that one of his superiors, Ted Knauss ("Knauss"), frequently mentioned playing golf to Mr. Valente, however, Mr. Valente acknowledged that he was simply "drawing conclusions" in equating golf comments to his age. (*Id.* ¶¶ 94-96.)

In April 2018, MacDonald notified Mr. Valente that his performance fell short of expectations in both February and March 2018. (*Id.* ¶ 107.) For example, Mr. Valente was supposed to make fifty-six prospect calls over the two months, but he made only one. (*Id.* ¶ 107.) MacDonald also voiced his concerns that Mr. Valente was spending a lot of time out of the office, and that no sales activities were documented in Defendant's systems. (*Id.*) During Mr. Valente's disciplinary period, MacDonald asked two employees to be his "eyes and ears" as MacDonald did not work at the same location as Mr. Valente, and MacDonald was unable to personally observe Mr. Valente's work and attendance. (DSSOMF ¶ 25.) Mr. Valente admitted that he "may have been a little lax" at entering his sales activities in Defendant's systems, and also admitted that it was "a failing" on his part as MacDonald had stressed to him the importance of documenting his sales activities. (SOMF ¶ 112.) MacDonald had held regular meetings with Mr. Valente in 2018 to discuss his progress, reminded him of the metrics he needed to satisfy, and explained the consequences of failing to meet those expectations. (*Id.* ¶ 120.)

In May 2018, MacDonald notified Mr. Valente that his revenue was only at thirty-two percent of his goal. (*Id.* ¶ 114.) On June 12, 2018, MacDonald placed Mr. Valente on probation following MacDonald's consultation with and approval by a senior employee relations specialist employed by Defendant. (*Id.* ¶ 115.) The probation letter contained specific production goals that Mr. Valente was required to meet, and the letter further warned that failure to meet those goals could result in termination. (*Id.* ¶ 91.) On July 11, 2018, MacDonald contacted the employee relations team again about his concerns that Mr. Valente failed to meet his goals in June 2018. (*Id.* ¶ 125.) Two days later, on July 13, 2018, Mr. Valente sent a reply-all email to a customer stating "I'm done with this guy.  I told Bill [MacDonald] I'm not even going to bother responding." (*Id.* ¶ 129.) The customer then replied:

> Done with this guy!  Im [sic] not in the mood to take any BS or insults from you.  Hmm, you sent the e-mail to [the] wrong person. How about I'm now going to be done with PNC.  I'm not the biggest customer but [I] have been loyal for twenty+ years.  amazing how one guy can kill it[.]
>
> [(*Id.*)]

Soon after Mr. Valente sent this email, MacDonald emailed an employee relations specialist about what transpired, his concern that this email could cost Defendant a "$4,000,000 client," and requested that Mr. Valente's employment be terminated. (*Id.* ¶ 131.) On July 19, 2018, MacDonald notified Mr. Valente that his employment was terminated with Defendant. (*Id.* ¶ 138.)

Prior to Mr. Valente's termination, in May 2018, Defendant hired 42-year-old Matthew Kanarick ("Kanarick") to fill several vacancies on MacDonald's team as an RM III. (PSSOMF ¶¶ 17, 19; DSSOMF ¶¶ 17, 19.)  In late 2017 and early 2018, three RMs left MacDonald's team.

(DSSOMF ¶ 17.)  Following Mr. Valente's termination, his accounts were transferred to Kanarick. (*Id.* ¶ 20.)

### C. Parties' Arguments

Defendant argues that it is entitled to summary judgment for six reasons.  *First*, Plaintiff cannot establish a *prima facie* case of age or disability discrimination because Defendant neither sought nor hired anyone to replace Mr. Valente.  (ECF No. 28-10 at 13.)  *Second*, Plaintiff cannot establish a *prima facie* case of disability discrimination because there is no evidence that Mr. Valente was disabled.  (*Id.* at 16.)  *Third*, Plaintiff cannot establish a *prima facie* case of disability discrimination under a failure to accommodate theory because Mr. Valente was not disabled, and he admitted that he never requested an accommodation.  (*Id.* at 18.)  *Fourth*, Defendant terminated Mr. Valente for legitimate, non-discriminatory reasons.  (*Id.* at 19.)  *Fifth*, Plaintiff cannot establish a triable issue of pretext.  (*Id.* at 20.)  *Sixth*, Plaintiff's IIED claim is not viable and fails as a matter of law.  (*Id.* at 32.)  Plaintiff disagrees with each of these reasons.  (*See generally* ECF No. 34.)

## II.  **LEGAL STANDARD**

Pursuant to Rule 56, "[s]ummary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.,* 835 F.3d 388, 402 (3d Cir. 2016) (citing Fed. R. Civ. P. 56(a)).  "A fact is material if—taken as true—it would affect the outcome of the case under governing law." *M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "And a factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*  Moreover, "under the Local Civil Rules, it is not enough to merely

state disagreement with a statement of material fact.  []  If a party disputes a material fact without citation to supporting documents, the material fact 'shall be deemed undisputed for purposes of the summary judgment motion.'"  *Fowler v. AT&T Servs., Inc.*, Civ. No. 18-667, 2020 WL 2839461, at 1 n.2 (D.N.J. May 31, 2020), *aff'd sub nom. Fowler v. AT&T, Inc.*, 19 F.4th 292 (3d Cir. 2021).

## III.   **DISCUSSION**

Plaintiff's NJLAD claims are governed by the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Zive v. Stanley Roberts, Inc.*, 867 A.2d 1133, 1139 (2005).  Under the *McDonnell Douglas* framework, a plaintiff first bears the burden to establish a *prima facie* case of discrimination.  *Id.*  To establish a *prima facie* case of discrimination under the NJLAD, a plaintiff must show that "(1) he was in the protected group; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he nevertheless was fired; and (4) the employer sought someone to perform the same work after he left."  *Id.* at 1141.

Second, if a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate nonretaliatory or non-discriminatory reason for the adverse employment action.  *Clowes v. Terminix Int'l, Inc.*, 538 A.2d 794, 805 (1988).  Third, the plaintiff bears the final burden to demonstrate that the defendant's proffered reason is a mere pretext through evidence that the provided rationale is false or that the real reason for the adverse action was discriminatory or retaliatory animus.  *Zive*, 867 A.2d at 1140; *see Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (requiring plaintiff to "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a

motivating or determinative cause of the employer's action" (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994))).   More particularly, Plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons." *Fuentes*, 32 F.3d at 765 (citing *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992); *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638 (3d Cir. 1993)).

## A.  NJLAD: Age and Disability Discrimination (Counts I and II)

The Court may grant summary judgment in favor of the defendant if it finds that the plaintiff fails to plead a *prima facie* case of employment discrimination.  *Vernon v. A & L Motors*, 381 F. App'x 164, 168 (3d Cir. 2010) (affirming district court's summary judgment because the plaintiff failed to make out a *prima facie* case of employment discrimination).

Defendant argues that Plaintiff "can neither make out a prima facie case of discrimination nor meet his burden of proving that PNC's reason for terminating his employment, his job performance, was a pretext for age or disability discrimination."  (ECF No. 28-10 at 13.)   The Court agrees that Plaintiff cannot establish a *prima facie* case for disability discrimination but finds that Plaintiff establishes a *prima facie* case of age discrimination.

### 1. Disability Discrimination

Defendant claims that Plaintiff cannot establish a *prima facie* case for disability discrimination because he was not disabled.[8]

The NJLAD requires Plaintiff to show that Mr. Valente was disabled and therefore a member of a protected class. *See Zive*, 867 A.2d at 1138. In order to show that Mr. Valente was physically disabled, Plaintiff must prove that Mr. Valente suffered from a "[(1)] physical disability, infirmity, malformation or disfigurement; (2) which is caused by bodily injury, birth defect or illness." *Photis v. Sears Holding Corp.*, Civ. No. 11-6799, 2013 WL 3872519, at 6 (D.N.J. July 25, 2013). Since the NJLAD's inception, "New Jersey courts have repeatedly emphasized the broad remedial nature of the LAD, and have admonished that it should be construed liberally." *Olson v. Gen. Elec. Astrospace*, 966 F. Supp. 312, 315 (D.N.J. 1997) (citing *Andersen v. Exxon Co.*, 89 N.J. 483, 446 A.2d 486 (1982)). Moreover, "the evidentiary burden on Plaintiff at this stage is not intended to be laborious, and merely requires that the fact pattern is consistent with discriminatory intent." *Thurston v. Cherry Hill Triplex*, 941 F. Supp. 2d 520, 535 (D.N.J. 2008). However, the statute does not protect "conditions of limited duration that amount to merely a temporary emergency situation." *Berdzik v. Physicians Endoscopy, LLC*, Civ. No 20-11656, 2021 WL 3260857, at *8 (D.N.J. July 30, 2021) (internal citation and quotations omitted) (finding that the plaintiff failed to demonstrate that he was disabled following surgery to repair an abdominal hernia and remove a foreign object blocking his intestinal track).

---

[8]     Defendant also argues that Plaintiff fails to establish a *prima facie* case for disability discrimination because they "neither sought nor hired anyone to replace" Mr. Valente. (ECF No. 13.) Since the Court finds that Plaintiff fails to establish that Mr. Valente was disabled, and therefore cannot establish a *prima facie* disability discrimination case, the Court need not reach this point on Plaintiff's disability discrimination claim.

Plaintiff argues that Mr. Valente falls within the definition of "disabled" under NJLAD as he suffered from a "debilitating orthopedic condition requiring surgery and accordingly, medical leave." (ECF No. 34 at 8.)   When pressed on the nature of his alleged disability, Mr. Valente stated that his disability was a "mobility restriction" following his 2017 surgery, which requires him more time to get ready in the morning and "loosen[] up." (ECF No. 28-2 at 8:5-24, 12:14-21.)

Upon review of the record, the Court does not find that Mr. Valente's condition constituted a disability under N.J. Stat. Ann. § 10:5–5(q).   Moreover, this case is similar to *Berdzik v. Physicians Endoscopy, LLC*, where summary judgment was entered for the defendant employer on the plaintiff's disability discrimination claim. 2021 WL 3260857, at *9. In *Berdzik*, the plaintiff underwent surgery to repair an abdominal hernia and remove a foreign object from his intestinal track. *Id.*   Upon his return to work a week later, the plaintiff did not demonstrate that any of his prior medical emergencies impacted his ability to work, and the "existence of a handicap was not readily apparent." *Id.* ("Plaintiff has not cited to any case law, medical sources, or any other authorities to support the proposition that any of the conditions he alleges amount to a disability under the NJLAD.   He simply requests the Court to accept at face value that these conditions qualify as a disability, which is not sufficient to state a claim.")

Here, it is undisputed that Mr. Valente had two surgeries and missed nearly half of 2017 for a medical leave of absence. (DDSOMF ¶ 11.)   When Mr. Valente returned to work in September 2017, however, he had no restrictions and admits that he did not submit any medical documentation to Defendant about an ongoing disability. (SOMF ¶ 80.) Moreover, Mr. Valente admitted that there was no medical reason why he could not fully perform his daily job tasks upon his return to work in September 2017. (*Id.* ¶ 82.) Plaintiff requests that the Court accept Mr.

11

Valente's argument that he was disabled at face value, but like *Berdzik*, without more Plaintiff fails to establish that Mr. Valente was disabled.

Plaintiff's disability discrimination claim under a failure to accommodate theory also cannot stand as a matter of law as it too requires the showing of a disability. *Rich v. New Jersey*, 294 F. Supp. 3d 266, 279 (D.N.J. 2018). "To sufficiently state a claim for failure to accommodate under the NJLAD, in addition to establishing the prima facie elements, a plaintiff has to allege four elements: (1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Id.*

Defendant argues that Plaintiff's failure to accommodate theory cannot stand because Mr. Valente was not disabled and because he never requested an accommodation. The Court agrees. Mr. Valente admitted that he never requested an accommodation when he returned from medical leave in September 2017, and that he had no medical need for an accommodation. (SOMF ¶¶ 81, 151.)   For these reasons, Plaintiff has failed to establish a *prima facie* case for disability discrimination based on a failure to accommodate. *Photis*, 2013 WL 3872519, at 8. (granting summary judgment on failure to accommodate claim under NJLAD because the plaintiff failed to establish that he was disabled, and he never requested an accommodation).

To the extent that Plaintiff argues that Defendant discriminated against Mr. Valente under a perceived handicap theory, this argument also fails to pass muster. For example, in *Thurston v. Cherry Hill Triplex*, the plaintiff took medical leave to have surgery on her Achilles tendon, which required twelve weeks of medical leave. 941 F. Supp. 2d at 522. The plaintiff was terminated and brought myriad of discrimination claims, several of which were under the NJLAD. The court granted summary judgment for the defendant because the plaintiff provided no evidence, other

than her conclusory allegations, to suggest that her employer perceived her as disabled or that she was fired because of her condition. *Id.* at 537. The court rejected the notion "that because her employer was aware of the reason for her medical leave, a discriminatory motive based on a perceived handicap must necessarily follow." *Id.*

Similarly, in *Spagnoli v. Brown & Brown Metro, Inc.*, the plaintiff suffered a pulmonary embolism, which caused her to miss about six weeks of work. 2007 WL 2362602, at *9. Following plaintiff's recovery, her physicians had cleared her to go back to work without any accommodation. *Id.* The court granted summary judgment for the defendant because the plaintiff failed to provide any support or evidence that her condition was of "such an enduring character" that it constituted a disability under NJLAD, or any evidence suggesting that her employer perceived her as disabled. *Id.* at 9-10.

Like *Thurston* and *Spagnoli*, Plaintiff fails to submit any evidence that indicates Defendant perceived Mr. Valente to be disabled. The record is clear that upon Mr. Valente's return to work in September 2017, he admitted that he did not have any restrictions and that he did not submit any medical documentation to Defendant indicating an ongoing disability. (SOMF ¶ 80.) Mr. Valente also admitted that he did not provide any medical reason why he could not perform his job responsibilities upon his return to work. Following *Thurston*, the mere fact that Defendant knew Mr. Valente took medical leave for his back issues is insufficient to establish a perceived disability discrimination claim. 941 F. Supp. 2d at 537.

### 2. Age Discrimination

Defendant's sole challenge to Plaintiff's attempt to establish a *prima facie* age discrimination case is that "[Defendant] neither sought nor hired anyone to replace him." (ECF No. 28-10 at 13.) As noted above, Plaintiff must show that Defendant "sought someone to perform

the same work after he left" in order to assert a *prima facie* case of employment discrimination. *Zive*, 867 A.2d at 1141. For age discrimination claims, "the fourth element "require[s] a showing that the plaintiff was replaced with 'a candidate sufficiently younger to permit an inference of age discrimination.'" *Nini v. Mercer Cnty. Cmty. Coll.*, 968 A.2d 739, 743 (App. Div. 2009), *aff'd*, 202 N.J. 98 (2010) (citing *Bergen Commercial Bank v. Sisler*, 157 N.J. 188, 213 (1999); *see also Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 304 (3d Cir. 2004) ("we are satisfied that we should apply the same standard for the fourth element of [plaintiff's] *prima facie* case under the NJLAD as we would have applied under the ADEA" where a plaintiff must show that they were replaced by someone sufficiently younger than them).

Here, the parties dispute whether Mr. Valente was replaced by another employee. Plaintiff argues that Kanarick was hired to replace Mr. Valente. (ECF No. 34 at 12.) Defendant disputes this and argues that Kanarick was hired before Mr. Valente was terminated, so Plaintiff's argument must fail as a matter of law. (ECF No. 36 at 7.)

Defendant cites several cases for the proposition that where plaintiff's duties are absorbed by existing employees following their termination, the plaintiff cannot establish the fourth prong for age discriminate under the NJLAD. (ECF No. 28-10 (citing *O'Hare v. McLean Packaging & Trucking*, Civ. No. 08-2083, 2009 WL 3207277, at 12 (D.N.J. Sept. 29, 2009); *Rooney v. NVR, Inc.*, Civ. No. 18-10670, 2020 WL 1864609, at 9 (D.N.J. Apr. 13, 2020).))

In *O'Hare*, the plaintiff was terminated, and his job duties were assumed by an experienced existing employee who continued to perform his own job as well. *O'Hare*, 2009 WL 3207277, at 12. As a result, the Court entered summary judgment against the plaintiff on his NJLAD claim because the evidence indicated that the person who replaced the plaintiff was an experienced employee who also maintained his other job responsibilities and did not receive an increase in

salary. *Id.* Moreover, the defendant did not hire anyone to assist with the plaintiff's replacement. Similarly, in *Rooney,* the court found that the plaintiff was not replaced by a new hire as an existing member of the team took over the plaintiff's duties a month after his termination. WL 1864609, at 9.

The Court finds the facts in this case distinguishable from *O'Hare* and *Rooney.* Shortly before Mr. Valente was terminated in July 2018, 42-year-old Kanarick was offered a job in May 2018 and began working as an RM III on June 11, 2018. (SOMF ¶ 17.) Although MacDonald's team had several RM III vacancies at that time, *all* of Mr. Valente's accounts were transferred to Kanarick. (*Id.* ¶ 20 (emphasis added).) This is not like *Rooney* and *O'Hare* where veterans of the team assumed the plaintiffs' job responsibilities in addition to their own; this was a situation where "a recent hire who had the capacity to take on a number of accounts at once" assumed of all Mr. Valente's accounts.[9] (*Id.* ¶ 20.) Due to the temporal proximity of when Kanarick was hired in relation to Mr. Valente's termination and that all of his accounts were reassigned to Kanarick in conjunction with the Court's obligation to view the facts in the light most favorable to Plaintiff and draw all inferences in favor of Plaintiff, the Court finds that Plaintiff has established a *prima facie* case for age discrimination as it has sufficiently shown that Mr. Valente was replaced by someone significantly younger than him. *Auto-Owners,* 835 F.3d at 402; *see also Gok v. Ports*

---

[9]      Plaintiff further adds that transferring Mr. Valente's accounts to Kanarick was contrary to Defendant's protocol. (ECF No. 34 at 10.) However, Mr. Valente fails to cite to any established protocol in the record. Plaintiff appears to take issue with the fact that when another employee was promoted in early 2018, MacDonald distributed all of his accounts to various RMs on his team, four of which went to Mr. Valente. (DSSMF ¶ 24.) Defendant asserts that this was done by MacDonald as he desired to pair each client with the best fitting RM. (*Id.*) The Court finds nothing in the record to suggest Defendant had established protocols for reassigning work after an employee leaves the company.

*Am., Inc.,* Civ. No. 15-3468, 2015 WL 4915518, at *4 (D.N.J. Aug. 17, 2015) (noting the low bar

of establishing a *prima facie* case of age discrimination under the NJLAD).

### 3. Defendant's Legitimate, Non-Discriminatory Reasons

Since Plaintiff asserts a *prima facie* case of age discrimination, the burden shifts to

Defendant to show that Mr. Valente was fired for a legitimate, non-discriminatory reason.[10]

Defendant asserts that Mr. Valente was terminated for legitimate, non-discriminatory reasons.

(ECF No. 28-10 at 19.) Specifically, Defendant asserts that Mr. Valente's poor job performance

was well-documented pre-dating and post-dating his medical leave in 2017, which consisted of the

following:

- a 2016 performance rating of Meets Some Expectations (delivered in January 2017);
- a 2017 performance rating of Meets Some Expectations (delivered in January 2018);
- a January 22, 2018 verbal warning, followed by Plaintiff's failure to meet the stated performance requirements for February or March;
- an April 9, 2018 written warning, followed by Plaintiff's failure to meet the stated performance expectations for April or May; and
- a June 12, 2018 probation, followed by his failure to meet the performance standards for June.

[(*Id.*)]

The Court also notes that MacDonald notified Mr. Valente that his performance fell short of

expectations in both February and March 2018 as he was tasked with making fifty-six prospect

calls during this time, but that he made only one. (SOMF ¶ 107.) MacDonald also shared with

Mr. Valente his concerns that Mr. Valente was spending a lot of time out of the office, and that no

---

[10]     Assuming *arguendo*, that Plaintiff established a *prima facie* case for disability discrimination, which the Court found it has not, Defendant argues that its' legitimate, non-discriminatory reasons for Mr. Valente's termination apply equally to both the age and disability discrimination claims. (*See* ECF No. 28-10.)

sales activities were documented in Defendant's business tracking systems. (*Id.*) During his deposition, Mr. Valente admitted that he "may have been a little lax" at entering or tracking his sales activities, and also admitted that it was "a failing" because he knew MacDonald had emphasized the importance of documenting his sales activities. (*Id.* ¶ 112.) Plaintiff admits that as of May 2018, about two months before his termination and five months after MacDonald provided Mr. Valente a verbal warning regarding his poor job performance, Mr. Valente's revenue was only at 32 percent of his goal. (*Id.* ¶ 114.) As a result, Mr. Valente was placed on probation on June 12, 2018.[11] (*Id.* ¶ 115.)

On July 11, 2018, MacDonald contacted a member of Defendant's employee relations team about moving forward with Mr. Valente's termination. (*Id.* ¶ 125.) Two days later on July 13, 2018, Mr. Valente admitted that he mistakenly replied all on an email chain that went to a client where Mr. Valente wrote "I'm done with this guy. I told [MacDonald] I'm not even going to bother responding." (*Id.* ¶ 129.) The client responded:

> Done with this guy! Im [sic] not in the mood to take any BS or insults from you. Hmm, you sent the e-mail to [the] wrong person. How about I'm now going to be done with PNC. I'm not the biggest customer but [I] have been loyal for twenty+ years. amazing how one guy can kill it[.]
>
> [(*Id.*)]

Mr. Valente was terminated six days later. (*Id.* ¶ 138.)

For these reasons, even if Plaintiff satisfied his *prima facie* burden, Defendant has asserted a legitimate, non-discriminatory reason for Mr. Valente's termination – Mr. Valente's repeated poor job performance. *See Sample v. Marketstar Corp.*, Civ. No 12-5538, 2014 WL 3894262, at

---

[11]     The document provided to Mr. Valente when he was placed on probation outlined specific goals that Mr. Valente was expected to meet, and it warned him that failure to meet those goals could result in the termination of his employment. (SOMF ¶ 115.)

9 (D.N.J. Aug. 7, 2014) (finding that plaintiff's "failure to correct his well-documented performance issues" constituted a legitimate, non-discriminatory reason for plaintiff's termination); *Maher v. Abbott Lab'ys*, Civ. No. 11-5161, 2013 WL 6326488, at 13 (D.N.J. Dec. 4, 2013) (finding that the defendant asserted a legitimate, non-discriminatory reason for the plaintiff's termination due to poor performance and customer complaints, and noting "The Third Circuit has held that a long history of poor performance is a legitimate, non-discriminatory reason for terminating an employee.")

Putting Mr. Valente's performance record aside, terminating Mr. Valente for the July 13, 2018 email to Defendant's client, which resulted in the client threatening to terminate his business relationship with Defendant, alone is a legitimate, non-discriminatory reason for his termination. *See, e.g.*, *Holly v. Stryker Corp.*, Civ. No. 18-702, 2019 WL 952233, at *6 (E.D. Pa. Feb. 27, 2019), *aff'd*, 785 F. App'x 937 (3d Cir. 2019) ("Here, [Defendant] has asserted that it terminated Holly based on the customer complaints about him. [] Plaintiff has not contested that this is a legitimate nondiscriminatory rationale for termination, and rightly so. Courts in this district have found this same proffered reason sufficient to meet the employer's burden of production at the second stage of the *McDonnell Douglass* framework." (citing *Kier v. F. Lackland & Sons, LLC*, 72 F. Supp. 3d 597, 604 (E.D. Pa. 2014))); *Smith v. N3 Oceanic, Inc.*, 717 F. App'x 162, 165 (3d Cir. 2017) (affirming summary judgment for the employer and noting that a customer complaint and lack of professionalism are legitimate, non-discriminatory reasons for termination; *Hutchinson v. Bennigan's/Metromedia Rest., Inc.*, Civ. No. 02-5364, 2006 WL 477003, at *9 (D.N.J. Feb. 28, 2006), *aff'd sub nom. Hutchinson v. Scull*, 241 F. App'x 860 (3d Cir. 2007) ( finding "customer complaints about discourtesy" as a legitimate, non-discriminatory reason).

### 4. Pretext

Plaintiff next argues that "assuming this Court finds that the Defendant has articulated a legitimate, non-discriminatory reason for [Mr. Valente's] termination, the record reflects . . . an abundance of pretextual reasons for his termination." (ECF No. 34 at 12.)

"Because defendants provided sufficient non-discriminatory reasons for plaintiff's termination, the burden of production shifts back to plaintiff to prove that the articulated reason was merely pretext to mask the discrimination' or was not the true motivating reason for the employment decision." *Buchholz v. Victor Printing, Inc.*, 877 F. Supp. 2d 180, 189 (D.N.J. 2012) (citation and quotations omitted); *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (stating that the plaintiff must show "by a preponderance of the evidence that the employer's explanation is pretextual."). Proving pretext "places a difficult burden on the plaintiff." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005) (citing *Fuentes*, 32 F.3d at 765). To defeat summary judgment after a defendant asserts "legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.

Defendant argues that Plaintiff cannot satisfy either "prong" under *Fuentes*, and the Court agrees.

Upon review of the record, Plaintiff fails to cite to any evidence that would enable a factfinder to "reasonably disbelieve" Defendant's legitimate reasons for terminating Mr. Valente were discriminatory. Defendant states that they advised Mr. Valente that:

> (1) he failed to meet his revenue goals across multiple product lines (or "buckets") and/or he failed to meet his overall revenue goal; (2)

he failed to originate the requisite number of new clients each year; (3) he failed to diversify and grow his book of business in order to reduce the risk associated with relying on just a few key accounts to generate revenue; (4) he failed to make the required number of sales calls to existing clients; (5) he failed to make the requisite number of prospect calls; (6) he failed to conduct relationship reviews; (7) he failed to actively cultivate and leverage COI (centers of influence) relationships for referrals; (8) he insufficiently engaged in the community to market himself and PNC; (9) he failed to build and maintain a pipeline sufficient to meet his revenue expectations; and (10) he failed to document his sales activities in CRM.

[(ECF No. 28-10 at 23-24 (citing ECF No. 28-9 ¶¶ 18-33, 36-77, 83-91, 104-122).)]

Plaintiff does not dispute that Mr. Valente was required to meet annual production goals in several different areas outside of total revenue such as loans, deposits, and sales calls. (SOMF ¶ 32.) Plaintiff also does not dispute that in the first five months of 2017, before Mr. Valente's medical leave, Mr. Valente's production numbers and call reporting were not satisfactory. (*Id.* ¶ 83.) Mr. Valente did not dispute the accuracy of the results in his 2017 evaluation. (*Id.* ¶ 90.) Mr. Valente also admitted that he failed to make prospect calls, record his sale activities in Defendant's database, only achieved 32 percent of his revenue goal as of May 2018, and accidentally sent an email to a client that he was "done" with the client and "not even going to bother responding." (*Id.* ¶¶ 107, 114, 129.)   Instead, Mr. Valente maintained "a totally different view" of his job performance as he believed he generated "high revenue numbers." (ECF No. 28-2 at 13:17-17:4.)

Essentially, Plaintiff disagrees with Defendant's decision to terminate Mr. Valente as Plaintiff disagrees with the metrics Defendant used to evaluate Mr. Valente's job performance. But this is not enough to demonstrate pretext. *See Fuentes*, 32 F.3d at 765 ("To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."). So

long as Defendant used criteria related to Mr. Valente's performance, the Court "will not second guess the method the employer uses to evaluate its employees." *Kautz*, 412 F.3d at 468.

Here, the Court finds that Defendant's criteria was related to Mr. Valente's job performance, so the Court will not second guess Defendant's metrics. *See Kautz*, 412 F.3d at 468. The record shows that RMs were evaluated under several different "buckets" such as new clients, client and prospect calls, relationship reviews with current clients, total revenue, and then revenue goals for various areas such as credit, deposits, treasury management, capital markets, wealth management, workplace banking, institutional investments, and equipment finance. (ECF No. 28-9 ¶¶ 27, 28, 30.) RMs were also required to track their progress and sales activities on Defendant's computer systems. (ECF No. 28-9 ¶ 114.) Moreover, Plaintiff does not dispute that Mr. Valente knew of his annual production goals in these variety of categories. (SOMF ¶ 32.)

Since the Court will not second-guess how Defendant evaluates its employees, in order to properly demonstrate pretext, Plaintiff is required to put forth evidence that Defendant did not believe Mr. Valente's job performance was *actually* poor. *Frymoyer v. E. Penn Mfg. Co., Inc.*, 757 F. App'x 97, 101 (3d Cir. 2018) ("The issue is whether [defendant] believed [plaintiff] committed the offense, not whether [plaintiff] in fact did so.") (emphasis added). To do so, Plaintiff bears the burden of showing that Defendant's reason for Mr. Valente's termination was false due to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions from which a reasonable juror could conclude that the Defendants' explanation is unworthy of credence, and hence infer that the employer did not act for the asserted [legitimate] reasons." *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 262 (3d Cir. 2017); *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1216 (3d Cir. 1988) ("our inquiry must concern pretext, and is not an independent assessment of how we might evaluate and treat a loyal employee."). Plaintiff fails to do so.

Instead, as previously mentioned above, Plaintiff takes exception with Defendant's characterization of Mr. Valente's poor work performance as Mr. Valente believed his revenue streams were high and that other "buckets" were "not as important." (ECF No. 28 at 82:12-84:5.) Plaintiff's disagreement with Defendant's assessment criteria is "insufficient to establish pretext." *Molnar v. Covidien LP*, Civ. No. 13-5338, 2016 WL 1597242, at 4 (D.N.J. Apr. 21, 2016), *aff'd*, 687 F. App'x 189 (3d Cir. 2017); *see also Langley v. Merck & Co.*, 186 F. App'x 258, 261 (3d Cir. 2006) ("disagreement with the assessment criteria . . . is not sufficient to avoid summary judgment.")   Plaintiff's criticisms of Defendant's criteria do not constitute "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions from which a reasonable juror could conclude that the Defendants' explanation is unworthy of credence, and hence infer that the employer did not act for the asserted [legitimate] reasons." *Carvalho-Grevious*, 851 F.3d at 262. Since "[c]ourts are not permitted to second-guess performance standards or to make personnel decisions for employers," Plaintiff's argument does not pass muster and fails to satisfy the first prong of *Fuentes*.  *Geaney v. Computer Scis.* Corp., Civ. No. 03-2945, 2005 WL 1387650, at 7 (D.N.J. June 10, 2005) (citing *Ditzel v. Univ. of Medicine & Dentistry of New Jersey*, 962 F.Supp. 595, 604 (D.N.J.1997)).

Plaintiff also fails to satisfy *Fuentes*' second prong.  Under the second prong of *Fuentes*, Plaintiff must show that Defendant "in the past had subjected him to unlawful discriminatory treatment, that the employer treated other, similarly situated persons not of his protected class more favorably, or that the employer has discriminated against other members of his protected class or other protected categories of persons." *Fuentes*, 32 F.3d at 765. Courts typically require plaintiffs to assert more evidence than a plaintiff's own testimony to properly demonstrate pretext. *See, e.g.*, *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 650 (3d Cir. 2015) ("rumored,

22

unspecified, and uncorroborated" testimony alleging employment discrimination is insufficient to establish pretext); *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 415 (3d Cir. 1999) (affirming district court's summary judgment because even if plaintiff had established a *prima facie* case for employment discrimination he failed to produce any evidence outside of his own testimony that suggested his former employer's actions were racially motivated).  Following this, speculation alone is also not sufficient to sustain a claim under the NJLAD.  *See Peralta v. Joule Staffing Servs., Inc.*, Civ. No. 1004-11T3, 2013 WL 28085, at 7 (N.J. Super. Ct. App. Div. Jan. 3, 2013) ("speculation is legally insufficient to prove pretext or retaliatory motive, as required under the *McDonnell Douglas* framework.").

Defendant argues that Plaintiff cannot satisfy the second prong of *Fuentes* as Defendant has never subjected Mr. Valente to unlawful discriminatory treatment, it has not treated similarly situated employees outside Mr. Valente's protected class more favorably than him, and it has not discriminated against other members of Mr. Valente's protected class(es) or other protected categories of employees.  (ECF No. 28-10 at 27-32.)  Plaintiff contests this and argues that Mr. Valente was treated unfavorably compared to the younger RMs. (ECF No. 34 at 13-14.)  Plaintiff asserts several unsupported and conclusory arguments to show Mr. Valente was discriminated against such as: he was the oldest RM at PNC who had "no disciplinary history that necessitated a disciplinary action plan"; Defendant sabotaged Mr. Valente by diverting leads to younger RMs; MacDonald had two administrative assistants monitor Mr. Valente and no other RMs; MacDonald monitored Mr. Valente's computer usage but did not for other RMs; Mr. Valente was placed on a disciplinary plan following his 2017 performance evaluation, during which he raised allegations of age discrimination; he was the only RM fired despite having better rankings than other RMs; and MacDonald and another employee made disparaging comments about Mr. Valente's mental

acuity due to his age and medical condition. (*Id.* at 12-14.) Defendant disputes Plaintiff's allegations and asserts that they are inaccurate as Plaintiff does not and cannot cite evidence that Defendant discriminated against Mr. Valente or others due to age or disability in the past, or that Defendant treated any employee – either younger or non-disabled – differently than Mr. Valente. (ECF No. 36 at 12.) Based on a review of the record, the Court agrees with Defendant.

First, the record does not suggest that Defendant subjected Mr. Valente to unlawful discriminatory treatment in the past. In 2013 and 2015, at the age of 66 and 68, Mr. Valente received "Meets all Expectations" ratings. (SOMF ¶¶ 39-42, 58.) Mr. Valente did not allege age discrimination until February 2018 when he received a "Meets Some Expectations" rating and was given a verbal warning. (*Id.* ¶¶ 8, 92-99, 101-105.) Mr. Valente stated: "I think I am being managed out most likely because of my age. Knauss makes standing jokes about what he thinks my work ethic is in meetings."[12] (*Id.* ¶ 92.)

Second, Plaintiff has provided no evidence that Defendant discriminated against other employees who are similar in age or disabled. Defendant even notes that Mr. Valente's former teammate, Phil Clark ("Clark"), is an RM III who has reported to MacDonald since 2013. (ECF No. 28-9 ¶ 143.) Like Mr. Valente, Clark took medical leave in 2017 at the age of 60 years old. As of May 28, 2021, the day Defendant filed this Motion, Clark was still employed by Defendant. (ECF No. 28-10 at 29.) Other than Mr. Valente's own testimony, Plaintiff proffers no evidence that Defendant has a pattern of managing out older employees, or employees who have taken medical leave.

---

[12]   After Mr. Valente made these age discrimination allegations, MacDonald immediately contacted the employee relations team so they could investigate the accusation. (*Id.* ¶ 102.) Mr. Valente was then contacted by an investigator on the employee relations team, but Mr. Valente admittedly did not respond to her and refused to participate in the investigation as he did not "trust the system." (*Id.*)

Third, Plaintiff also fails to provide any evidence of an employee outside his protected class (sufficiently younger or non-disabled) who was not fired even though they had poor job performance. To be similarly situated, "courts tend to consider whether the plaintiff and the comparator had similar job responsibilities, were subject to the same standards, worked for the same supervisors, and engaged in comparable misconduct." *Ewell v. NBA Properties, Inc.*, 94 F. Supp. 3d 612, 624 (D.N.J. 2015) (citing *McCullers v. Napolitano*, 427 F. App'x. 190, 195 (3d Cir.2011)). Plaintiff fails to identify any sufficiently younger or non-disabled RM III whom Defendant treated more favorably despite performing comparably to Mr. Valente. (ECF No. 28-9 ¶¶ 3, 19-23, 25.)

The crux of Plaintiff's pretext arguments arises from speculative allegations, which are not sufficient to state a claim for employment discrimination under NJLAD. *See Peralta*, 2013 WL 28085, at 7. For example, when questioned at his deposition about the basis for his age discrimination allegations, Mr. Valente stated that he "was the oldest [RM] on the team" and Knauss had made "comments" and "insinuations" about him golfing. (SOMF ¶ 93.) These comments consisted of Knauss saying "glad you could make it. Must be rain this afternoon . . . you know, your tee time," which Mr. Valente believed it made it seem like "I was, you know, winding down, not giving it serious attention, and you know, half already in retirement, which none of that was true, but he made it sound that way." (*Id.* ¶ 94.) Mr. Valente conceded that people of all ages golf, golf was a common way of doing business, and that he was "drawing conclusions" about Knauss' golf comments being related to his age. (*Id.* ¶ 97.) Moreover, Mr. Valente also took issue with MacDonald's comment that he was having a hard time retaining information and instructions, but Mr. Valente acknowledged that he may have forgotten certain processes while out on leave and admits that he does not know what MacDonald intended when

he made the comment. (*Id.*; ECF No. 28-2 at 119:3-15.) Because Plaintiff's discrimination allegations are admittedly based on speculation, Plaintiff cannot meet his pretextual burden, and therefore cannot establish a claim for employment discrimination under NJLAD. *DeMoss v. Arc of Somerset Cnty.*, Civ. No. 2927-13T4, 2015 WL 657106, at 6 (N.J. Super. Ct. App. Div. Feb. 17, 2015) (affirming summary judgment as claims of discrimination based on speculation cannot sustain a claim for employment discrimination under NJLAD).

To add, this case is on-point with *McCann v. PNC Financial Services Group, Inc.*, Civ. No. 18-13909, 2020 WL 4915704, at 5 (D.N.J. Aug. 21, 2020). In *McCann,* the plaintiff brought claims under NJLAD for employment discrimination after he alleged that he was terminated based on his age. *Id.* The plaintiff accused the defendant of wanting "a younger workforce." *Id.* However, the plaintiff's only support for this allegation was his own testimony. *Id.* The Court granted summary judgment in favor of the defendant because "summary judgment cannot be defeated" by allegations not supported by the record. *Id.* Moreover, "the party adverse to summary judgment cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions." *Id.* (citing *Parker v. Sch. Dist. of Philadelphia*, 415 F. Supp. 3d 544, 552 (E.D. Pa. 2019), *aff'd*, Civ. No. 19-3940, 2020 WL 4530107 (3d Cir. Aug. 6, 2020)).

For these reasons, Plaintiff has failed to satisfy either *Fuentes* prong; therefore, Plaintiff has failed to demonstrate pretext as the record indicates that all actions taken against Mr. Valente were based on legitimate, non-discriminatory reasons proffered by Defendants – Mr. Valente's poor job performance and a customer complaint. *El-Sioufi v. St. Peter's Univ. Hosp.*, 887 A.2d 1170, 1187 (N.J. Super. Ct. App. Div. 2005) (affirming summary judgment as "an employee's poor performance in discharging his duties is a legitimate non-discriminatory reason to fire or

demote the employee.") (citing *Casseus v. Elizabeth Gen. Med. Ctr.*, 671 A.2d 176, 181 (N.J. Super. Ct. App. Div. 1996)).

### B. IIED

Defendant also moves for summary judgment on Plaintiff's IIED claim.  To properly demonstrate an IIED claim, a plaintiff must show: the defendant acted intentionally, that the defendant's conduct was extreme and outrageous, that the defendant's conduct was the proximate cause of the plaintiff's emotional distress, and that the plaintiff suffered severe emotional distress that no reasonable person could endure it.  *Drisco v. City of Elizabeth*, Civ. No. 12-2111, 2013 WL 6450221, at 9 (D.N.J. Dec. 9, 2013) (citing *Buckley v. Trenton Saving Fund Society*, 111 N.J. 355 (1988)).  "Examples of conduct found to be extreme and outrageous by New Jersey courts include, when a physician, knowing it to be false, told parents their son was suffering from cancer; spreading a false rumor that plaintiff's son had hung himself; bringing a mob to plaintiff's door with a threat to lynch him if he did not leave town; and wrapping up a gory dead rat inside a loaf of bread for a sensitive person to open."  *Coefield v. GPU*, 125 F. App'x 445, 450 (3d Cir.2005) (quoting *McConnell v. State Farm Mut. Ins. Co.*, 61 F.Supp.2d 356, 363 (D.N.J.1999)).  As a general principle, "conduct in the workplace will rarely be so egregious as to give rise to a claim of intentional infliction of emotional distress."  *Ingris v. Drexler*, Civ. No. 14-2404, 2015 WL 1472657, at 3 (D.N.J. Mar. 30, 2015) (citing *Ingraham v. Ortho–McNeil Pharm.*, 422 N.J. Super. 12, 23 (N.J. Super. Ct. App.Div. 2011)).  Moreover, "the termination of an employee, whatever the secret motive underlying it, is the kind of event that happens every day; such an act is not even a breach of modern-day business etiquette, much less an uncivilized barbarism.  Quite a bit more . . . must accompany a firing if it is to be deemed 'outrageous.'"  *Iwanicki v. Bay State Mill. Co.*, Civ. No. 11-01792, 2011 WL 6131956, at 8 (D.N.J. Dec. 7, 2011) (citing *Fletcher v. Wesley*

*Medical Center*, 585 F.Supp. 1260, 1262 (D.Kan.1984)); *see also Lemke v. Int'l Total Servs., Inc.*, 56 F. Supp. 2d 472, 488–89 (D.N.J. 1999) *aff'd*, 225 F.3d 649 (3d Cir. 2000) (same).

Defendant argues that Plaintiff's IIED claim must fail as a matter of law because the circumstances surrounding Mr. Valente's employment termination are not considered extreme or outrageous. (ECF No. 28-10 at 33-35.) The Court agrees with Defendant and grants summary judgment in favor of Defendant on Plaintiff's IIED claim.

As mentioned above, terminating an employee is generally not considered extreme or outrageous conduct that rises to the level sufficient to state a claim for IIED. *Ingris*, 2015 WL 1472657, at 3; *Iwanicki*, 2011 WL 6131956, at 8. Plaintiff has failed to cite any conduct that might be considered extreme or outrageous to support an IIED claim. *Acevedo v. Monsignor Donovan High Sch.*, 420 F.Supp.2d 337, 348 (D.N.J. 2006) (finding that the plaintiff failed to state a claim for IIED even though he was terminated because of his age as "claims regarding employment decisions fail to state a claim for intentional infliction of emotional distress as a matter of law."); *Coefield*, 125 F. App'x at 450 (citation omitted). As such, the Court grants summary judgment in favor of Defendant on Plaintiff's IIED claim.

## IV. __CONCLUSION__

For the foregoing reasons, and other good cause shown, the Defendant's Motion for Summary Judgment (ECF No. 28) is **GRANTED**. Plaintiff's Complaint is **DISMISSED** with prejudice. An appropriate Order and Judgment follows.

Dated: August _30_, 2023

__GEORGETTE CASTNER__
__UNITED STATES DISTRICT JUDGE__